<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| EILEEN ORTIZ, | Civil Action No. 19-13717 (SDW) |
| Plaintiff, | |
| v. | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | November 30, 2020 |

**WIGENTON**, District Judge.

Before the Court is Plaintiff Eileen Ortiz's ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner") with respect to Administrative Law Judge Pedro Tejada-Rivera's ("ALJ Tejada-Rivera") denial of Plaintiff's claim for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Venue is proper pursuant to 28 U.S.C § 1391(b). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court finds that ALJ Tejada-Rivera's factual findings are supported by substantial evidence and that his legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

**I.     PROCEDURAL AND FACTUAL HISTORY**

    **A.     Procedural History**

Plaintiff applied for DIB on November 18, 2014, alleging disability as of March 1, 2014. (Administrative Record ("R.") at 277–80.) In her DIB application, Plaintiff alleged ADHD,

bipolar disorder, depression, anxiety, and a stomach ulcer, but not obesity. (R. 156.) The state agency denied Plaintiff's application both initially and upon reconsideration. (R. 39–46.) Upon Plaintiff's request, ALJ Tejada-Rivera held an administrative hearing on July 28, 2017. (R. 23.) On October 11, 2017, the ALJ issued a written decision that Plaintiff was not disabled and thus not entitled to disability benefits. (R. 23–31.) The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (R. 1–8.) On judicial review, Plaintiff asks this Court to reverse the Commissioner's decision or remand it for a new hearing. (D.E. 18 at 1.)

### B. Factual History

Plaintiff is fifty–three years old and has a master's degree in human resources. (R. 30, 125.) She worked as a human resource specialist for various manufacturers until she quit her job in early 2014. (R. 126–28.) She told her employer that she needed to stop working and seek medical treatment because of her overwhelming workload, but she later revealed that she stopped working to care for her ill father in Puerto Rico. (R. 392, 442.) Plaintiff's psychiatrist, Carmencita Lanez, M.D. ("Dr. Lanez"), completed a FMLA certification stating that Plaintiff's condition limited her to working 6–8 hours per day, but her employer required her to work 6 days per week for 10 hours per day. (R. 336, 394.) When her FMLA expired, Plaintiff proceeded to collect unemployment benefits, representing that she was able, willing, and ready to work. (R. 126–28.)

In November 2015, despite continuing to allege an inability to work since March 2014, Plaintiff began work as the executive administrative assistant for the superintendent of schools at the Academy for Urban Leadership in New Jersey. (R. 128–30, 146.) The school terminated her in June 2016 for her lack of professional writing skills and inability to work independently. (R. 359.) Plaintiff then collected unemployment benefits for 12 weeks. (R. 146, 147.)

In her function report, Plaintiff stated that she gets her daughter ready for school, drives her to school, and then comes back to the house to wash clothes and clean the house. (R. 76, 77.) She helps her daughter with her schoolwork, washes her clothes, cleans her room, and prepares her food, including sandwiches, rice, beans, meat, and soup. (R. 77, 78.) She does household chores on a daily basis for "many hours." (R. 78.) She goes outside 1-2 times per day, drives a car, and goes out alone. (R. 79.) She goes shopping for food, clothes, and school supplies. (*Id.*) She reported that she can pay bills, count change, handle a savings account, and use a checkbook. (*Id.*) The record contains notes from multiple doctors who treated Plaintiff for psychological and physical impairments, beginning in 2014. The following is a summary of the evidence.

In September 2014, Plaintiff was still in Puerto Rico and reported to APS Clinic that she was not taking any medication. (R. 64–66.) The lack of medication caused an uptick in her symptoms, though her mental status exam revealed only a mild attention disorder. (*Id.*) Thereafter, according to APS Clinic treatment notes from November 2014 through May 2015, Plaintiff alleged that she was irritable, but she demonstrated that she had no attention disorder, her mood and impulse control were normal, her affect was appropriate, her thought process was logical, her memory was intact, her concentration was adequate, her intellect and judgment were good, and her introspection was adequate. (R. 48–63, 67–69.)

In February 2015, Plaintiff was back in New Jersey, where the state disability agency referred her to Alberto Rodriguez-Robles, M.D ("Dr. Rodriguez-Robles"), for a consultative examination. Plaintiff reported to Dr. Rodriguez-Robles that she had been depressed since the death of her child many years ago and attended monthly treatment, but she had never been hospitalized for psychiatric reasons. (R. 71; *see id.* 142, 143.) The mental status exam revealed that Plaintiff was depressed and anxious, but she remained cooperative and fully oriented with no

3

organization or thought content deficits. (R. 72, 73.) Plaintiff also exhibited adequate memory, attention, concentration, judgment, self-criticism capacity, and impulse control. (R. 73, 74.) Dr. Rodriguez-Robles diagnosed Plaintiff with "moderate" depression and attention disorder. (R. 74.)

Also in February 2015, Janice Calderon, Psy. D., a state agency psychological consultant, reviewed Plaintiff's file and concluded that her mental impairment was not severe because the APS Clinic progress notes did not indicate significant limitations, Plaintiff had no psychiatric hospitalizations, and Dr. Rodriguez-Robles's report showed adequate functional abilities. (R. 164.) Upon Plaintiff's reconsideration request, in June 2015, a second state agency psychological consultant reviewed Plaintiff's file and also concluded that Plaintiff did not have a severe mental impairment. (R. 175, 176.)

In April 2017, Plaintiff was brought to the hospital because she expressed suicidal thoughts. (R. 553.) However, at the hospital, she denied having such thoughts and the medical providers noted no distress, anxiety, or aggressive behavior. (R. 534, 535.) Plaintiff did well during her hospitalization, she consistently denied suicidal ideation, and the hospital discharged her a couple days later in stable condition with no restrictions on her activities. (R. 531, 532.) Plaintiff began taking Abilify and, in May 2017, reported to Dr. Lanez that she was less depressed and had no suicidal ideation. (R. 555, 563.)

Dr. Lanez completed mental impairment questionnaires for Plaintiff in June 2016, February 2017, and June 2017. She checked boxes indicating that Plaintiff's mental impairments would cause her to be absent from work more than three times per month and that Plaintiff would have difficulty working at a regular job on a sustained basis because of bouts of mood swings, anhedonia, and poor concentration. (R. 515, 516, 521, 527.) In June 2016, Dr. Lanez checked boxes indicating moderate social functioning difficulties, and marked concentration, persistence,

4

or pace deficiencies, but Dr. Lanez found that these limitations caused no restrictions in Plaintiff's daily living activities. (R. 522.) By June 2017, Dr. Lanez noted that Plaintiff's concentration, persistence, or pace deficiencies improved from "marked" to "moderate." (R. 528.)

With respect to physical impairments, the medical record contains treatment notes from Plaintiff's gastroenterologist, Sanjeev Nayyar, M.D. ("Dr. Nayyar"). In January 2015, Dr. Nayyar completed a medical report noting no issues with Plaintiff's general health, including her weight or nutrition. (R. 505, 506.) Dr. Nayyar found no limitations in Plaintiff's ability to do work-related activities, such as sitting, standing, walking, lifting, or carrying. (R. 507.) Dr. Nayyar's treatment notes indicated no history of weakness, shortness of breath, or back or joint pain. (R. 508, 512.) Plaintiff's lungs and heart were normal, and she walked with a normal gait. (*Id.*) Similarly, in April 2015, a state agency medical consultant, Ulises Melendez, M.D., reviewed Plaintiff's file and concluded that Plaintiff did not have a severe physical impairment. (R. 163.) Upon Plaintiff's reconsideration request, in June 2015, a second state agency medical consultant, Cindy Ramirez Pagan, M.D., reviewed Plaintiff's file and also concluded that Plaintiff did not have a severe physical impairment. (R. 174.)

### C. Hearing Testimony

Plaintiff and her non-attorney representative appeared and testified at an administrative hearing before ALJ Tejada-Rivera on July 28, 2017. (R. 23.) The ALJ also heard testimony from an impartial vocational expert, Joey Kilpatrick ("VE Kilpatrick"). VE Kilpatrick categorized Plaintiff's previous skilled work as a human resources administrator and concluded that it could not be done by a hypothetical person with Plaintiff's vocational profile and residual functional capacity ("RFC"), as found by ALJ Tejada-Rivera. (R. 150–52.) However, VE Kilpatrick testified that there were other jobs in the national economy that a person with Plaintiff's age, education,

work history, and RFC limitations could perform, including office helper, mail sorter, and hospital cleaner. (*Id.*)

## II. LEGAL STANDARD

### A. Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08–cv–1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (internal quotation marks omitted) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give

substantial weight and deference to the ALJ's findings.  *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008).  Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination."  *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits."  *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (internal quotation marks omitted) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)).  Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits."  *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984) (citations omitted).

### B.     The Five–Step Disability Test

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382.  An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months.  42 U.S.C. § 423(d)(1)(A).  The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological

7

abnormalities which could reasonably be expected to produce the pain or other symptoms alleged." 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five–step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85–28, 96–3p, 96–4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20

C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e).  An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments.  20 C.F.R. §§ 404.1545, 416.945.  The ALJ considers all impairments in this analysis, not just those deemed to be severe.  20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96–8p.  After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work.  20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f).  If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act.  20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f).  If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, at step five the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. DISCUSSION

#### A.

On October 11, 2017, ALJ Tejada-Rivera held that Plaintiff was not disabled from the alleged onset date through the date of the decision. (R. 31.) At step one, the ALJ found that Plaintiff had engaged in substantial gainful employment since the alleged onset date. (R. 25.) The ALJ therefore only addressed the period in which Plaintiff did not engage in substantial gainful employment. (*Id.*) At step two, the ALJ found that Plaintiff had the following severe impairments: obesity, attention deficit hyperactivity disorder, major depressive disorder, and bipolar disorder. (*Id.*) The ALJ also considered Plaintiff's stomach ulcer but did not find it to be severe. (R. 26.)

At step three, the ALJ concluded that Plaintiff's impairments, individually and in combination, did not "meet[] or medically equal[] the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I (20 C.F.R. 404.1520(d), 404.1525, and 404.1526)." (*Id.*) The ALJ specifically considered Listing 12.04 for Depressive and Bipolar Disorder and Listing 12.11 for Neurodevelopmental Disorders. (*Id.*) In order to satisfy either requirement, Plaintiff had to prove that she met the "paragraph A" criteria. *See* 20 C.F.R. 404, Subpart P, Appendix 1 §§ 12.04, 12.11. She also had to prove the "paragraph B" criteria for Listing 12.11 and either the "paragraph B" or "paragraph C" criteria for Listing 12.04. *Id.* The "paragraph B"

criteria require at least one extreme or two marked limitations in any area of functioning. *See id.* §§ 12.04.B, 12.11.B. The "paragraph C" criteria require that the mental disorder be "serious and persistent," and supported by evidence of both medical treatment and marginal adjustment. *See id.* § 12.04.C. Here, the ALJ found that Plaintiff's "paragraph B" limitations were mild or moderate, not marked or extreme. (R. 26, 27.)[1] He also found no evidence to support the presence of "paragraph C" criteria. (R. 27.) Because Plaintiff met neither Paragraph B nor Paragraph C criteria, the ALJ concluded that Plaintiff's impairments did not meet the severity of the Listings. (*Id.*)

Prior to steps four and five, the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels, provided she did not work in proximity to moving mechanical parts or in high exposed places, due to her obesity and potential medication side effects. (R. 27, 29.) Because of her severe mental impairments, he also limited Plaintiff to (1) performing simple, routine, and repetitive tasks, or jobs that can be learned in 30 days or less; (2) understanding, remembering, and carrying out simple instructions; and (3) no interaction with crowds or the public, although she could have frequent interactions with coworkers and supervisors. (R. 27, 29.) At step 4, the ALJ found that Plaintiff was unable to perform her past relevant work as a human resources administrator, a skilled job that exceeded her RFC. (R. 29, 30.) Lastly, at step 5, the ALJ relied on VE Kilpatrick's testimony to find that Plaintiff was able to perform other work that existed in significant numbers in the national economy, including work as an officer helper, mail sorter, and hospital cleaner. (R. 30, 31.) ALJ Tejada-Rivera therefore concluded that Plaintiff was not disabled under the Act during the relevant period. (R. 31.)

---

[1] Specifically, the ALJ found that Plaintiff had a moderate limitation in "understanding, remembering, or applying information," a moderate limitation in "interacting with others," a moderate limitation in "concentrating, persisting, or maintaining pace," and a mild limitation in "adapting or managing oneself." (R. 26, 27.)

11

B.

On appeal, Plaintiff seeks reversal or remand of the Commissioner's decision.  (*See* D.E. 18 at 1.)  Plaintiff asserts that ALJ Tejada-Rivera did not properly evaluate (1) her obesity and (2) the opinion of her treating psychiatrist, Dr. Lanez.  (D.E. 18 at 9–30.)  This Court considers the arguments in turn and finds each unpersuasive.

An ALJ "must meaningfully consider the effect of a claimant's obesity." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).  Here, Plaintiff did not allege obesity as an impairment in her DIB application, and her representative did not allege that obesity was a severe impairment during her hearing.  (R. 123, 156.)  Nonetheless, ALJ Tejada-Rivera recognized that Plaintiff's Body Mass Index qualified her as "clinically obese" and classified her obesity as a severe impairment.  (R. 25, 28.)  He then "considered how weight affects [Plaintiff's] ability to perform routine movement and necessary physical activity within the work environment" and recognized that "[t]he combined effects of obesity with other impairments may be greater than might be expected without the disorder."  (R. 28.)  After doing so, he added limitations to Plaintiff's RFC to accommodate her obesity.  (R. 27, 29.)

Plaintiff argues that the ALJ, after finding obesity to be a severe impairment at step two of his analysis, should have explicitly discussed Plaintiff's obesity at step three of his analysis (including its contribution to her mental impairments) and included additional RFC exertional limitations.  (D.E. 18 at 14–21.)  However, an ALJ's decision must be "read as a whole" when assessing whether substantial evidence supports an ALJ's finding.  *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).  Furthermore, a "wide range of limitation language is permissible [in the RFC], regardless of what the ALJ found at earlier steps of the analysis." *Hess v. Comm'r*

*of Soc. Sec.*, 931 F.3d 198, 209 (3d Cir. 2019). Remand is not warranted where a Plaintiff does "not specify how [her] obesity further impaired [her] ability to work, but speculates merely that [her] weight makes it more difficult to stand and walk." *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) (citation and quotation omitted). It is the Plaintiff's burden to establish, not just that "obesity *can* impair one's ability to perform basic work activities," but by "specifying *how* her obesity . . . affected her ability to perform basic work activities." *Carter v. Comm'r of Soc. Sec.*, 805 F. App'x 140, 143 (3d Cir. 2020) (emphases in original).

Here, just as in *Carter*, Plaintiff "does not point to any medical evidence" demonstrating that her obesity "limit[s] her ability to perform work activities." *Id.* She has not furnished any evidence—not one medical opinion—that her obesity caused any physical limitations. Nor has she set forth any evidence that her obesity contributed to her mental impairments. (*See* D.E. 18 at 17.) Instead the record shows that Plaintiff engaged in extensive homemaking activities for "many hours" without being impeded by her obesity, as well as a long career unimpeded by her obesity. (R. 28, 78.) The record also shows that state agency medical consultants opined that Plaintiff did not have any severe physical impairments. (R. 29; *see id.* 163, 174.) It further shows that Plaintiff's gastroenterologist, Dr. Nayyar, noted no issues with her general health; no limitations in her ability to do work-related activities such as sitting, standing, walking, lifting, or carrying; no history of weakness, shortness of breath, or back or joint pain; and normal lungs, heart, and gait. (R. 505–08, 512.) On this record, substantial evidence—more than a mere scintilla—supports the ALJ's obesity assessment. Remand, therefore, is not warranted on this basis.

Next, Plaintiff argues that it was improper for the ALJ to give "little weight" to the opinion Plaintiff's only treating psychiatrist, Dr. Lanez, whose opinion the ALJ found to be "inconsistent with the evidence." (D.E. 18 at 21–29; R. 29.) The Third Circuit has held that an inconsistency

13

between a Plaintiff's daily living activities and a medical opinion is a legitimate basis to discredit the opinion. *See, e.g.*, *Hubert v. Comm'r of Soc. Sec.*, 746 F. App'x 151, 153 (3d Cir. 2018); *Russo v. Astrue*, 421 F. App'x 184, 191 (3d Cir. 2011). Here, the record shows that Plaintiff gets her daughter ready for school, drives her to school, and then comes back to the house to wash clothes and clean the house. (R. 76, 77.) She helps her daughter with her schoolwork and prepares her food. (R. 77, 78.) She does household chores on a daily basis for "many hours." (R. 78.) She goes outside 1-2 times per day, drives a car, and goes out alone. (R. 79.) She goes shopping for food, clothes, and school supplies. (*Id.*) She can pay bills, count change, handle a savings account, and use a checkbook. (*Id.*) She testified that she goes to meetings at her daughter's school and to her daughter's saxophone concerts. (R. 149.) Even Dr. Lanez stated that Plaintiff had no daily living activity restrictions. (R. 522.) This evidence does not portray the life of a person who was precluded from unskilled work, as Dr. Lanez believed, and the ALJ was permitted to discount the weight of her opinion on this basis.

Furthermore, the ALJ discussed that Plaintiff returned to work at a skilled level during her claimed period of disability and worked at a substantial and gainful level during portions of it. (R. 25.) Specifically, Plaintiff worked for seven months in 2015 to 2016 as the executive administrative assistant for the superintendent of schools at the Academy for Urban Leadership. (R. 128–30, 146, 359.) This, too, supports giving less weight to Dr. Lanez's opinion that Plaintiff could not perform even a reduced range of unskilled work.

The ALJ additionally discussed the findings of the consultative examiner, Dr. Rodriguez-Robles, who found that Plaintiff showed slowed psychomotor activity and was anxious and depressed, but "was cooperative, spontaneous, made good eye contact, had an appropriate affect and exhibited logical, coherent and relevant thoughts." (R. 28; *see id.* 72, 73.) Plaintiff "denied

suicidal ideation" and had "impulse control, adequate social interaction, adequate memory and adequate concentration." (R. 28; *see id.* 73, 74.) Although, Dr. Rodriguez-Robles assessed Plaintiff with depressive disorder and attention disorder, these impairments were only "moderate." (R. 28; *see id.* 74.) The consultative examiner's findings, thus, also contradict Dr. Lanez's opinion that Plaintiff suffered from disabling limitations. In fact, even Dr. Lanez found that Plaintiff's concentration, persistence, or pace deficiencies improved from "marked" in June 2016 to only "moderate" in June 2017. (R. 522, 528.)

Plaintiff may point to evidence that supports a different conclusion, but "[t]he ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz*, 244 F. App'x. at 479 (citation omitted). Ultimately, "a reviewing court is obliged to consider the entire record, and to determine whether the evidence taken as a whole supports the administrator's decision." *Smith v. Califano,* 637 F.2d 968, 973 (1981) (Adams, J., concurring). Here, ALJ Tejada-Rivera's findings, including his evaluation of Plaintiff's obesity and his weighing of Dr. Lanez's opinion, were more than adequately supported by the entire record.

## IV. CONCLUSION

For the foregoing reasons, this Court finds that ALJ Tejada-Rivera's factual findings were supported by substantial credible evidence in the record and his legal determinations were correct. Therefore, the Commissioner's determination is **AFFIRMED**. An appropriate order follows.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig: Clerk
cc: Parties